## SANTANA *v.* RAMÍREZ.

### APPEAL from the District Court of San Juan.

No. 22.—Decided November 18, 1903.

AGENCY.—The owner of property, or a business, who avails himself of the advantages of the agency of another, shall be liable for the obligations contracted for his benefit, and shall indemnify the agent for the necessary expenses which he may have incurred and for the losses which he may have suffered in the discharge of his duties.

JUDGMENTS.—Should the judgment order the payment of an unliquidated amount, the amount thereof shall be considered and determined in the proper procceeding for the execution of the judgment according to the rules prescribed by the Law of Civil Procedure.

#### STATEMENT OF THE CASE.

This appeal pending before us was taken by Sergio Ramírez, who entered an appearance in this Supreme Court, through his counsel, Jacinto Texidor, praying for the reversal of a judgment rendered by the District Court of San Juan, which literally reads as follows:

"Judgment. In the City of San Juan, February 15, 1903. The hearing has been had in this declaratory action prosecuted by Gerardo Santana y Santana, a resident of Caguas, represented by his counsel, Antonio Alvarez Nava, against Sergio Ramírez, a merchant and resident of this city, repres-

vecino de esta Ciudad, dirigido y representado por el Licenciado Don Jacinto Texidor y Alcalá del Olmo, sobre entrega de documentos ó determinada cantidad.

*Resultando:* que previo acto de conciliación, que en copia certificada se acompaña, Don Gerardo Santana y Santana promovió ante este Tribunal juicio declarativo, como cesionario de Don Miguel Quiñones Cabezudo, pidiendo que se condene á Don Sergio Ramirez á que le entregue los documentos creditivos del pago de los derechos de importación de dos partidas de azucar á que se contrae la demanda que interpone ó le pague tres mil seiscientos noventa y cuatro dollars veinte y dos centavos, á que ascienden aquellos, con las costas.

*Resultando:* que los hechos en que la funda son : que en Marzo de 1899 Don Nicolás Quiñones Cabezudo remitió á Ramirez doscientos sacos de azucar en comisión de venta, cuyos sacos el último los embarcó, por cuenta y riesgo de Quiñones en el vapor "Caracas", con destino á New York el 29 del indicado mes; que en Mayo ó Junio embarcó Ramirez en igual forma, en el vapor "Catania", setecientos sacos más de azucar, con igual destino; que Ramirez produjo á su comitente cuenta de venta de dicho fruto y en los gastos satisfechos figuran ochocientos treinta y siete dollars cincuenta y cinco centavos y dos mil ochocientos cincuenta y seis pesos sesenta y siete centavos por derechos de importación pagados en la Aduana de New York por las dos partidas de azucar, que Quiñones y Santana hicieron gestiones infructuosas para que Ramirez entregara las cartas de pago por los derechos del azucar ó reintegrara lo por ese concepto mandado devolver por el Gobierno, contestando con evasivas y solo vino á ofrecer la mitad de las sumas, lo que rechazó, y sí está dispuesto á pagar alguna comisión de cobro, no á ceder el cincuenta por ciento de los derechos; que ni Quiñones ni Santana autorizaron á Ramirez para la gestión, y si éste designó persona en los Estados Unidos, lo hizo sin orden ni autorización expresa ó tácita del único dueño de los derechos, Quiñones; que éste, por escritura pública, ante el Notario de Hato-Grande, otorgada en Caguas á 21 de Junio de 1902, cedió á Don Gerardo Santana, por dos mil quinientos dollars, los derechos y acciones de las negociaciones y actos ameritados contra Ramirez; que se celebró el acto de conciliación sin avenencia; siendo el derecho los artículos 1886 á 1890 del Código Civil.

*Resultando:* que el demandado contestó pidiendo se declare con lugar la excepción dilatoria de falta de personalidad y en su oportunidad desestimar la reclamación que se hace, declarando que Quiñones Cabezudo solo debe percibir de los derechos de setecientos sacos de azucar, pagados y devueltos en New York, el saldo que resulte después de satisfechos los gastos de Abogados y demás que originaron las reclamaciones hechas para obtener la devolución, con las costas; sentando como hechos: el embarque por vapores "Caracas"

ented by Jacinto Texidor y Alcalá del Olmo, Esq., for the delivery of documents or a certain sum of money.

"A certified copy of the record of the proceedings to avoid litigation was attached to the complaint by Gerardo Santana y Santana, who as assignee of Miguel Quiñones Cabezudo, prosecuted a declaratory action in the District Court of San Juan, praying that judgment be rendered ordering Serbio Ramirez to deliver to plaintiff the documents showing the payment of import duties on two shipments of sugar mentioned in the complaint, or to pay him three thousand six hundred and ninety-four dollars and twenty-two cents, the amount of aforesaid duties, with costs of the proceedings.

"The facts upon which the complaint is based are as follows:

"In March, 1899, Nicolás Quiñones Cabezudo forwarded to Ramirez two hundred bags of sugar to be sold on commission, which lot of sugar was shipped by the latter to New York per S. S. 'Caracas', for account and risk of Quiñones, on the 29th of said month. In May or June another lot of seven hundred bags of sugar was in the same manner shipped by Ramirez, per S. S. 'Catania', to the same port. Ramirez produced the account-sales of said sugar to his consignor, and in the charges paid are included two items of eight hundred thirty-seven dollars and fifty-five cents and two thousand eight hundred fifty-six dollars and sixty-seven cents for import duties at the New York Custom House, on both lots of sugar. Quiñones and Santana made unsuccessful efforts to get Ramirez to deliver the receipts for the duties paid on the sugar, or reimburse whatever amount of said duties had been ordered to be returned by the Government, he giving evasive answers, and finally offering one half of the amount refunded, which offer was refused, the owner of the sugar stating that while ready to pay a commission for the collection of the amount he was not disposed to give up fifty per cent. of the duties. Neither Quiñones nor Santana had authorized Ramirez to act for them in the matter, and in appointing an agent for the purpose in the United States, it was without the authorization, either express or implied, of the only person entitled to said duties, namely, Quiñones. The latter, by a public document executed in Caguas, June 21, 1902, before a notary public of Hato-Grande, assigned to Gerardo Santana, for two thousand five hundred dollars, all his rights and actions in the aforesaid negotiations and proceedings against Ramirez. The proceedings to avoid litigation were had without coming to any agreement. Article 1886 and 1890 of the Civil Code were cited as the law applicable to the case.

"In his answer defendant prayed that his demurrer alleging want of capacity on the part of the plaintiff be sustained, and that the latter's claim be dismissed, and that Quiñones Cabezudo be adjudged to receive on account of the duties on seven hundred bags of sugar paid and returned in New York, the balance left after deducting lawyer's fees and such other expenses as

y "Catania" de los sacos de azucar expresados, para New York, conviniendo se haría adelantando Ramirez el setenta y cinco por ciento del valor de la factura del fruto, dándole checks á cargo de De Ford y Compañía y abonándole el resto cuando enviasen de New York la cuenta de venta; que los azucares se consignaron á Mr. Henry Beste, de New York, y los derechos fueron pagados bajo protesta, notificando Ramirez á Quiñones en carta de 28 de Julio de 1899 y verbalmente á su hermano Ramón los pasos que se daban para la devolución de los derechos, dados por Beste antes de la decisión de la Corte Suprema de Washington, y después obtuvo Beste la devolución de unos dos mil dollars, poco mas ó menos, que no se consiguió la devolución de los derechos de los doscientos sacos de azucar, porque se habían pagado el 4 de Abril de 1899 y la decisión solo cubría los llegados á los Estados Unidos, del 11 de Abril, en que fué ratificado el Tratado de Paris, al 1º de Mayo de 1900, fecha de la implantación del Bill Foraker; que Beste remitió á Ramirez liquidación de los derechos cobrados, y, al recibirla, el segundo pasó aviso á Quiñones Cabezudo para que recogiera la parte que le correspondía, esto en contra del parecer de Abogados de esta Isla y comerciantes de New York, porque el azucar le correspondía al abonarle al contado el setenta y cinco por ciento, comprometiéndose á abonarle el resto á plazo; que no aceptó Quiñones la suma de mil doscientos dollars de la liquidación de Beste, no queriendo reconocer gastos de Abogados y otros hechos en New York para obtener la devolución, aun sabiendo Quiñones por el propio Beste, en New York, las diligencias que se practicaban, sin desautorizarlas; que no quiere reconocer ni acepta esos gastos porque afirma pudieron recobrarse con gastos sólo de tres ó cuatro por ciento, ó sea sesenta ú ochenta dollars; que Ramirez recibió la carta que acompaña en la que le dice que el Gobierno de los Estados Unidos no tiene poder para la devolución de su propia y libre voluntad por ser el resultado de un procedimiento judicial difícil y costoso; que el importador es quien debe reclamar y hacer la protesta en tiempo oportuno, y que la casa de Don Sergio Ramirez cesó en sus operaciones, sucediéndole De Solá y Ramirez, liquidadora de aquélla; siendo el derecho los artículos 227 y siguientes del Código de Comercio, los 1888 á 1890 y 1893 del Código Civil, el 532 de la Ley de Enjuiciamiento Civil y la falta de acción.

*Resultando:* que abierto á prueba el juicio, de la del actor aparece: la escritura de cesión de derechos y acciones otorgada en 21 de Junio de 1902, mencionada en el segundo Resultando, por Quiñones Cabezudo á Don Gerardo Santana; una circular de la disolución de la Sociedad De Solá y Ramirez, haciéndose cargo de su activo y pasivo Don Sergio Ramirez, en 18 de Octubre de 1902; una carta de De Solá y Ramirez á Quiñones Cabezudo, en 13 de Marzo de 1902, en la que expresan que han referido la carta del Sr. Quiñones, de doce del mismo, al Sr. Ramirez, quien dice que el 27 de

were incurred in securing the refund of said duties, with costs, and alleging the following facts: that the aforesaid sugar was shipped per steamers 'Caracas' and 'Catania', to New York, it being agreed that Ramirez was tto advance seventy-five per cent. of the value of the invoice, which would be paid in checks on De Ford & Co., the balance to be settled upon receipt of the account-sales from New York. The sugars were consigned to Henry Beste of New York, and the duties paid under protest, Ramirez notifying Quiñones, in a letter dated July 28, 1899, and his brother Ramón, verbally, as to the steps taken by Beste to secure the return of the duties paid by Beste before the decision was rendered by the Supreme Court at Washington, and Beste afterwards secured the return of some two thousand dollars, more or less; that the refund of the duties paid on the two hundred bags of sugar was not secured because they had been paid on April 4, 1899, while the decision covered only arrivals in the United States from April 11 when the Treaty of Paris was ratified, to May 1, 1900, when the Foraker Act took effect. Beste forwarded to Ramirez the liquidation of the duties collected, and upon receipt thereof the latter advised Quiñones Cabezudo, so that he might accept delivery of the portion belonging to him; this being contrary to the opinion of Porto Rican lawyers and of New York merchants, because the sugar belonged to Ramirez since he had paid seventy-five per cent. of its value in cash and engaged to pay the balance on time. Quiñones refused to accept the sum of twelve hundred dollars of the liquidation made by Beste, and would not recognize the validity of lawyer's fees and other expenses incurred in New York to obtain the reimbursement, although he was aware through Beste himself, of the steps that were being taken in New York, and had not disapproved them, he giving as a reason for not recognizing or accepting said expenses, that the duties could have been recovered at a cost of only three or four per cent, say some sixty or eighty dollars; that Ramirez had received the accompanying letter in which Beste stated that the Government of the United States had no power to make the reimbursement of its own free will, this being the result of difficult and expensive judicial proceedings; that the importer was the one who should present the claim and enter the protest in due time; and that the firm of Sergio Ramirez had ceased in its operations, being succeeded by De Solá & Ramirez, who were in charge of the liquidation of the former; the law cited being articles 227 *et seq.* of the Code of Commerce, 1888 to 1890 and 1893 of the Civil Code, 532 of the Law of Civil Procedure, and alleging the lack of a cause of action.

"The case being open for the introduction of evidence, plaintiff presented the deed of assignment by Quiñones to Santana, executed June 21, 1902, mentioned in the second finding of fact; a circular dated October 18, 1902, announcing the dissolution of the firm of De Solá & Ramirez, and that Sergio Ramirez had taken charge of the liquidation thereof; a letter from De Solá

Noviembre recibió carta de sus agentes dándole cuenta del resultado de las gestiones que les había encomendado en el asunto, y que el mismo dia lo participó al hermano de Quiñones, al pie de una carta, y después verbalmente en varias ocasiones, extrañándole á Ramirez no se haya personado en su oficina; cartas de 28 de Marzo, 2 de Abril, 16 de Mayo, 31 de Julio de 1899 y 17 de Marzo de 1902, sobre el embarque de los doscientos sacos de azucar en el "Caracas", sufragando gastos de su embarque y acarreto, consignados á Mr. Henry Beste, de New York, y el seguro cubierto bajo póliza flotante, siendo los gastos de embarque que detalla, treinta y ocho dollars veinte y cinco centavos, que el almacenaje de los quinientos setenta y cuatro sacos lo abonará al mismo precio pagado antes y puede girar á cargo de Ramirez hasta mil quinientos pesos moneda de Puerto Rico, que son mas ó menos las tres cuartas partes de la factura, avisando en una de sus cartas ha recibido la cuenta venta de los doscientos sacos, la que le remite, y el embarque por "Catania" de los setecientos sacos que ordenó; que quedan doscientos noventa y nueve pesos sesenta y dos centavos moneda provincial, sobrante á favor de Quiñones de los doscientos sacos, y á cuenta del embarque de los setecientos puede girar hasta tres mil trescientos setenta y cinco pesos oro americano, siendo los gastos que detalla de esos sacos ciento treinta y cuatro dollars veinte y cinco centavos; una cuenta venta de dos partidas de azucar y las cuentas venta de las dos partidas firmadas en New York por Mr. Henry Beste.

*Resultando*, ademas, de la prueba del actor, el reconocimiento por el demandado de la circular, cartas y cuentas por Ramirez producidas, confesando el recibo de las dos partidas de azucar para venderlas en el mercado, las que convinieron en embarcarlas para los Estados Unidos, adelantándole el setenta y cinco por ciento del valor, lo que le convirtió en interesado en los embarques, considerándose dueño por el adelanto, sin poder manifestar el tipo convenido; que no recibió instrucciones para reclamar la devolución de los derechos de Aduana, pero le comunicó gestionaba por Henry Beste, avisando á Quiñones todos los pormenores, y para que viniese á recoger lo que le tocaba de la reclamación, no conviniendo con Beste ni estipulado cantidad para el reclamo, recibiendo la cuenta de gastos de él sin comprobantes.

*Resultando* de la prueba del demandado tres cartas dirigidas á Don Sergio Ramirez por Quiñones Cabezudo, manifestándole acepta colocar algunos sacos de azucar para el consumo y si puede tomarse el setenta y cinco por ciento sobre la azucar que se embarque, desea probar con doscientos sacos, y si ha recibido la cuenta venta de los setecientos sacos la envíe; supone sabrá la forma en que fueron satisfechos los derechos de esa azucar y que Mr. Henry Beste solo quiso entregarle ciento cincuenta dollars, suma que deja abonada á su cuenta; otra carta de Mr. Henry Beste de New York, de 16 de Agosto

& Ramirez to Quiñones Cabezudo, dated March 13, 1902, in which the latter is informed that his letter of the 12th had been referred to Ramirez who stated that on the 27th of November he had received a letter from his agents reporting the result of the steps taken in the matter that had been entrusted to them, and that he (Ramirez) had communicated the same to Quiñones' brother at the bottom of a letter, and afterwards on several occasions verbally, and that he was surprised at Quiñones' failure to call on him at his office; letters of March 28, April 2, May 16, July 31, 1899, and, March 17, 1902, referring to the shipment of the 200 bags of sugar per S. S. 'Caracas', and cartage and shipping charges incurred, which shipment was consigned to Henry Beste, New York, the insurance being covered by an open policy, while the shipping charges referred to amounted, as per itemized statement, to thirty-eight dollars and twenty-five cents; and as to the storage of the 574 bags, the same price would be charged/ as before, he (Quiñones) being authorized to draw on Ramirez for one thousand and five hundred *pesos*, Porto Rico currency, this being about equal to three-fourths of the invoice value. In one of the letters he is advised of the receipt of the account-sales of the 200 bags, which account is forwarded to him, and of the shipment per 'Catania' of the 700 bags, as ordered by him; that of the 200 bags there remains in favor of Quiñones a balance of two hundred and ninety-nine *pesos*, and sixty-two *centavos* provincial money, and on account of the shipment of 700 bags he may draw up to three thousand three hundred and seventy-five dollars U. S. Ccy., the expenses incurred amounting, as per detailed statement, to one hundred and thirty-four dollars, twenty-five cents; and account-sales of two lots of sugar signed in New York by Henry Beste.

"In addition to the evidence introduced by the plaintiff there appeared an acknowlegment by the defendant of the circular, letters and accounts produced by Ramirez, the latter's acknowledgment of the receipt of the two lots of sugar to be sold in the market, which they agreed to ship to the United States, Ramirez advancing seventy-five per cent of the value thereof, which gave him an interest in the shipments, he considering himself as an owner by reason of the said advance, although he could not state the price agreed upon; that he had not received instructions to demand the refund of the Custom House duties, but advised Quiñones that he was acting through Beste, and kept him posted as to all the particulars, and had written him to call at his office for his share in the claim; that he had made no agreement with Beste as to the amount to be paid for presentation and collection of the claim, and had received the account for disbursements, without vouchers.

"The defendant introduced in evidence three letters from Quiñones Cabezudo to Sergio Ramirez in which the latter is informed that the former does not object to the sale of some bags for local consumption, but if seventy-five per cent. can be advanced on the sugar shipped, he was willing to make a

de 1902, la que con la de 8 de Agosto y la de 5 de Octubre de 1899 fueron remitidas á New York y reconocidas por Mr. Henry Beste contestó que recibió consignación de setecientos sacos de azucar de Don Sergio Ramirez, en Junio de 1899, sobre la que pagó los derechos de Aduana, protestando en el acto ante el Colector de New York, basado en que no debían ser cobrados, que estableció querella contra el Gobierno pidiendo la devolución de esos derechos; que empleó Abogado á quien tuvo que pagar honorarios.

. *Resultando*, además, de la prueba del demandado, que Don Nicolás Quiñones Cabezudo reconoció las tres cartas mencionadas en el Resultando anterior, declarando que Ramirez fué su comisionista á quien le mandaba azucar á depósito para venderla cuando el precio conviniere; que le encargó gestionase para que De Ford le diese el setenta y cinco por ciento del precio de esos azucares; que le mandó las dos partidas antes expresadas para que las remitiera á los Estados Unidos y venderlas allí; que habló en los Estados Unidos con Mr. Beste á quien encargó que al pagar derechos de Aduana lo hiciera bajo prótesta, y le contestó así lo había hecho; y de la testifical, que las reclamaciones para la devolución de derechos de Aduana, á que el pleito se refiere, los gastos fueron cincuenta por ciento de lo reclamado en setenta y nueve reclamaciones; y que después del fallo de la Corte Suprema á un tanto por ciento que convenían y los reclamantes dieron poder, expresando algunos que ellos reclamaron oficiosamente por ser agentes responsables ante la Aduana, por firmar las declaraciones, pagando el cincuenta por ciento á los Abogados y cobrando él el diez y entregando el cuarenta á sus representados.

*Resultando:* que terminada la prueba y habiendo renunciado al comienzo del juicio la defensa del demandado á la excepción dilatoria y teniéndola por renunciada, informaron los defensores de ambas partes lo que estimaron pertinente a su derecho.—Siendo Ponente el Sr. Juez Presidente Don Juan Morera Martinez.

*Considerando:* que renunciada por el demandante, al comienzo del juicio oral, la excepción dilatoria de falta de personalidad, por él propuesta, se le tuvo por renunciada, no siendo preciso por esa causa ocuparse de ella en esta sentencia.

*Considerando:* que Don Nicolás Quiñones Cabezudo, del que es cesionario el demandante Santana, celebró el contrato de comisión mercantil con Don Sergio Ramirez, según los hechos por ambas partes sentados en su demanda y contestación, y que la devolución de derechos que se reclaman por los azúcares satisfechos en New York, se derivan de ese contrato de comisión.

*Considerando:* que derívense de dicho contrato ó de la gestión de negocios, que es la forma como se ha. tratado ó planteado la cuestión, tiene Ramirez derecho al reintegro de gastos, según el Código de Comercio y según el artículo 1893 que es el aplicable al caso; dada la forma como la cuestión se ha planteado.

trial shipment of 200 bags; he is requested to send him the account-sales of the 700 bags, if the same has been received, and supposes that he knows the manner in which the reimbursement of the duties on said sugars was made, informing him at the same time that Henry Beste would not give him more than one hundred and fifty dollars, which sum he had entered to the credit of his account; another letter from Henry Beste, of New York, dated August 16, 1902, which together with those dated respectively August 8 and October 5, 1899, were forwarded to New York, being recognized by Beste who replied that he had received a consignment of 700 bags of sugar from Sergio Ramirez, in June, 1899, upon which he had paid Custom House duties under protest, claiming that the same were unduly collected; that he had instituted a claim against the Government for the return of said duties; and had retained a lawyer whose fees he had to pay.

"It further appears from the defendant's evidence that Nicolás Quiñones Cabezudo recognized the three letters mentioned in the foregoing findings of fact, and declared that Ramirez had been his agent, to whom he consigned sugar to be stored and sold when prices were acceptable; that he commissioned him to get De Ford to advance seventy-five per cent. of the value of said sugar; that he had sent him the aforesaid two lots to be shipped to the United States and sold there; that he had talked with Beste in New York, and had instructed him when called upon to pay the duties, to do so under protest, to which he replied that he had already done so. The testimony showed that the expenses incurred for securing the return of the Custom House duties, to which the suit refers, had been fifty per cent. in 79 claims; and that after the decision of the Supreme Court, at a stipulated percentage, the claimants giving for the purpose their power of attorney, some of them, however, claiming that having signed the manifest they were responsible Custom House agents, and as such had presented their claims; that the consignee had paid fifty per cent. to the lawyers, retained for himself ten per cent. and delivered to his principal forty per cent.

"The evidence having been introduced, and counsel for defendant having at the outset of the hearing withdrawn his dilatory pleading, the parties made such arguments as they deemed proper. Presiding Judge Juan Morera Martinez prepared the opinion of the court.

"The plaintiff at the beginning of the hearing having withdrawn his plea of want of capacity, there is no necessity to consider the same in this judgment.

"It appears that Nicolás Quiñones Cabezudo, of whom the plaintiff Santana is assignee, entered into a contract of business commission with Sergio Ramirez, as appears from the facts set out by the parties in the complaint, and the answers thereto, and that the demand for the return of the duties paid on certain sugars in New York arises from said contract.

*Considerando:* que dado el resultado del juicio y alegacianes hechas por las partes solo cabe declarar la existencia del crédito y que en pago está obligado el demandadte á admitir las gastos necesarios y útiles causados para la devolución, los que el Tribunal no puede determinar en la sentencia por resultar ilíquida la cantidad interin no se aprecien dichos gastos necesarios y útiles que ol referido artículo 1893 expresa.

*Considerando:* que resultando de ello ilíquida esa cantidad, el importe de esos gastos debe discutirse y resolverse en el cumplimiento de sentencia y por los trámites que determinan los artículos 931 y siguientes de la Ley de Enjuiciamiento Civil.

*Considerando:* que no habiéndose accedido á todo lo que solicita el demandante, ni á lo que pide el demandado, las costas deben imponerse sin especial condena.

*Fallamos:* que debemos declarar y declaramos que Don Sergio Ramirez debe entregar al demandante los documentos creditivos del pago de los derechos de importación de las partidas de azúcar á que se contrae la demanda ó satisfacerle la cantidad líquida que resulte de los tres mil seiscientos noventa y cuatro pesos veinte y dos centavos que en la demanda reclama, después de deducidos los gastos necesarios y útiles que hubiese hecho el gestor para el cobro de aquella suma, los que se fijarán en el cumplimiento de esta sentencia del modo y forma que la Ley de Enjuiciamiento Civil determina en su artículo 931 y siguientes, sin especial condena de costas.

*Así,* por esta nuestra sentencia, definitivamente juzgando, lo pronunciamos, mandamos y firmamos.—Juan Morera Martínez.—Frank H. Richmond.—Angel García.

*Publicación:* Leída y publicada fué la anterior sentencia por el Sr. Juez Presidente, Don Juan Morera Martínez y demás Sres. que la firman, celebrando audiencia pública el Tribunal, hoy 14 de Febrero de 1903.—Certifico: Evaristo Vélez".

*Resultando:* que notificada esta sentencia á dicho Sergio Ramíres, interpuso recurso de apelación que se admitió libremente, y con citación y emplazamiento de las partes se elevaron los autos á esta Superioridad, en donde se personó en tiempo el apelante, quien evacuó el trámite de instrucción que se le confirió, así como el abogado del apelado, Don Antonio Alvarez Nava, quien impugnó el recurso.

*Resultando:* que señalado día para la vista, tuvo ésta lugar el 5 del corriente, en cuyo acto las partes alegaron cuanto estimaron conducente á su derecho.

Abogado del apelante: *Sr. Texidor.*

"Whether arising from said contract or from business transactions which is the manner in which the question has been dealt with or presented, Ramirez is entitled to reimbursement of the expenses incurred, according to the Code of Commerce and article 1893 of the Civil Code, applicable to the case, considering the manner in which the question has been presented.

"In view of the result of the hearing and the allegations of the parties, the only thing to be done is to declare the existence of the debt and that in payment thereof plaintiff is bound to allow such necessary expenses as were incurred in securing the refund of the duties; and this cannot be determined by the court in this decision, the amount not having been liquidated, until the necessary expenses, mentioned in article 1893, shall have been ascertained.

"Said sum being uncertain, the amount of these expenses should be considered and determined in the proceedings for the execution of the judgment, under the provisions of articles 931 *et seq.* of the Law of Civil Procedure.

"All of the prayers of the plaintiff and of the defendant not having been granted, no special imposition of costs should be made.

"We adjudge that we should declare and do declare that Sergio Ramirez should deliver to plaintiff the vouchers relating to the payment of Custom House duties on the shipments of sugar mentioned in the complaint, or pay him the net balance after deducting the necessary expenses incurred for the recovery of said sum, which expenses shall be determined upon the execution of this judgment, in the manner prescribed by articles 931 *el seq.* of the Law of Civil Procedure, without special imposition of costs.

"Thus by this our judgment finally adjudging, we pronounce, command and sign.—Juan Morera Martinez.—Frank H. Richmond.—Angel García.

"Publication: The foregoing judgment was read and published by Presiding Judge Juan Morera Martinez and the other judges of the court whose signatures are attached hereto, at a session of the court held this 14th day of February, 1903. Certified to by me—Evaristo Velez."

Notice of this judgment having been served upon said Sergio Ramirez, he took an appeal which was allowed, and after citation of the parties, the record was sent up to this Supreme Court, where the appellant made his appearance in due time, the record being delivered to him for his examination and information as also to counsel for the respondent, who contested the appeal.

A day was set for the hearing, which was had on 5th instant, both parties making such allegations in support of their respective rights as they deemed proper.

Abogado del apelado: *Sr. Alvarez Nava.*

EL JUEZ ASOCIADO SR. SULZBACHER, después de exponer los hechos anteriores, emitió la siguiente opinión del Tribunal:

*Aceptando* los fundamentos de hecho y de derecho de la sentencia apelada.

*Vistas* las disposiciones legales que en la misma se citan. *Fallamos* que debemos declarar y declaramos que Don Sergio Ramírez debe satisfacer al demandante la cantidad líquida que resulte del importe de los derechos de importación de azúcares de que se trata, pagados y devueltos, después de deducidos los gastos necesarios y útiles que para el cobro de los mismos se hubieren hecho, los que se fijarán al ejecutarse la sentencia en el modo y forma que previene la Ley de Enjuiciamiento Civil; en cuyos términos confirmamos la sentencia apelada, con las costas á cargo del apelante.

No. 70.—Resuelto en Noviembre 19, 1903.

DIVORCIO.—SEPARACIÓN DE BIENES.—La separación definitiva de los bienes gananciales y la pérdida, por parte del marido, de la administración de los bienes exclusivamente propios de la mujer, son consecuencias necesarias de la sentencia que decrete el divorcio entre ambos cónyuges.

*Mr. Texidor,* for appellant.

*Mr. Alvarez Nava,* for respondent.

MR. JUSTICE SULZBACHER, after making the above statement of facts, delivered the opinion of the court as follows:

The findings of fact and conclusions of law contained in the judgment appealed from are accepted.

In view of the legal provisions cited therein we adjudge that we should declare and do declare that Sergio Ramirez should pay the plaintiff the net balance resulting from the amount of import duties recovered on the sugars in question, after deducting the necessary expenses incurred for the collection thereof, said expenses to be determined in executing the judgment, in the manner prescribed by the Law of Civil Procedure, in which sense we affirm the judgment appealed from, with costs against the appellant.

Chief Justice Quiñones and Justices Hernández and MacLeary concurred.

Mr. Justice Figueras did not sit at the hearing of this case.